IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PEDRO FELIPE URIBE ALVARADO, Plaintiff, <br><br> v. <br><br> CITY OF BERWYN, OFFICER RAUL PEREZ, JR., OFFICER JOSEPH CRUDO, OFFICER VINCENT SHELTON, and OFFICER HUMBERTO ZAMUDIO, <br><br> Defendants. | 23-cv-17084 <br><br> Judge: Hon. Sharon Johnson Coleman <br><br> Mag. Judge: Hon. Jeffrey T. Gilbert <br><br> **JURY TRIAL DEMANDED** |

## FIRST AMENDED COMPLAINT

Plaintiff PEDRO FELIPE URIBE ALVARADO ("Plaintiff"), by and through his attorneys at First Defense Legal Aid and Dentons US LLP, with this First Amended Complaint against Defendants CITY OF BERWYN and BERWYN POLICE OFFICERS RAUL PEREZ, JR., JOSEPH CRUDO, VINCENT SHELTON, and HUMBERTO ZAMUDIO, (collectively, "Defendants"), and in support thereof states:

### INTRODUCTION

1. This action is brought pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 2000d, and the Illinois Civil Rights Act to address deprivations of Plaintiff's rights under the Constitution of the United States as well as federal and state civil rights law.

2. The City of Berwyn, an overwhelmingly diverse municipality, operates its police department in violation of state and federal law. Specifically, the City, and its officers, intentionally maintain a discriminatory regime of policing based on national origin with regard to language access for non-English speakers, which has the effect of subjecting persons of non-US nationalities to disparate, unequal, and injurious treatment.

3. On November 29, 2022, Colombian immigrant Pedro Felipe Uribe Alvarado fell victim to this unlawful status quo when he was arrested by Berwyn Police Officers Raul Perez, Jr., Joseph Crudo, Vincent Shelton, and Humberto Zamudio, (collectively, "Defendant Officers") following a traffic stop in which they did not and could not speak to him in Spanish to verify the valid status of his foreign driver's license.

4. Ultimately, Defendant Officers arrested Plaintiff without lawful justification or probable cause.

5. While Plaintiff was taken to the station, officers mocked his use of the metric system (preferred in Colombia), and later taunted and berated him at the station while holding him in custody for several hours.

6. Plaintiff suffered unnecessary humiliation, distress, financial loss, and inconvenience as a result of Defendants' actions and Plaintiff now seeks justice.

## JURISDICTION AND VENUE

7. The jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C. §1983; the Judicial Code, 28 U.S.C. § 1331 and §1343(a); and the Constitution of the United States. Further, this Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over claims arising under Illinois state law.

8. Venue is appropriate under 28 U.S.C. § 1391(b), as, upon information and belief, all DEFENDANTS reside in this judicial district. In addition, the events giving rise to this claim occurred in this judicial district.

## PARTIES

9. Plaintiff Pedro Felipe Uribe Alvarado ("Plaintiff") is a Colombian national who at all times mentioned herein resided in the Northern District of Illinois.

10. Defendant City of Berwyn ("Defendant City") is, and at all times mentioned herein was, a municipality organized and operating under the statutes of the State of Illinois. It is authorized under the statutes of the State of Illinois to maintain the Berwyn Police Department, which acts as the City's agent in the areas of municipal law enforcement, and for which the City is ultimately responsible. Defendant City was, at all times material to this Complaint, the employer and principal of the Defendant Officers.

11. Defendant Officer Raul Perez, Jr. was at all times relevant to this Complaint a duly appointed and sworn law enforcement officer of the City of Berwyn, which was and is his principal employer.

12. Defendant Officer Joseph Crudo was at all times relevant to this Complaint a duly appointed and sworn law enforcement officer of the City Of Berwyn, which was and is his principal employer.

13. Defendant Officer Vincent Shelton was at all times relevant to this Complaint a duly appointed and sworn law enforcement officer of the City Of Berwyn, which was and is his principal employer.

14. Defendant Officer Humberto Zamudio was at all times relevant to this Complaint a duly appointed and sworn law enforcement officer of the City Of Berwyn, which was and is his principal employer.

15. At all times relevant herein, Defendant Officers were acting in the scope of their employment and under color of state law.

16. Defendant Officers are sued in their individual capacity.

# FACTS

**Plaintiff is Arrested while Lawfully Driving on a Valid Colombian Driver's License**

17. On the afternoon of November 29, 2022, Plaintiff was driving with his wife and friend to pick up his daughter from daycare.

18. Plaintiff is a native of Colombia, and at the time of this incident understood very little English and spoke only Spanish.

19. At the intersection of Ridgeland Avenue and 24th Street in Berwyn, Illinois, Plaintiff complied when Defendant Officers instructed him to pull over.

20. Plaintiff provided his valid Colombian driver's license to Defendant Officers.

21. At this point, and at every point in the course of the interaction on the street, Defendant Officers spoke to Plaintiff in English.

22. Plaintiff did not speak English on November 29, 2022.

23. After taking his Colombian driver's license back to their squad car for several minutes, Defendant Officers ordered Plaintiff out of his vehicle, searched him, and placed him in handcuffs.

24. Plaintiff attempted to explain he did not understand English, but Officers made no effort to call a Spanish speaking colleague and did not take any steps to ensure they could communicate with him.

25. Defendant Officers also did not examine additional documentation Plaintiff attempted to provide them.

26. Defendant Officers then arrested Plaintiff for No Valid Driver's License, 624 ILCS 5/6-101.

27. At no time during Plaintiff's interaction with Defendant Officers did anyone explain the reason for his arrest or communicate with him in Spanish.

28. Under the Illinois Vehicle Code, a nonresident who becomes a resident is allowed to drive on a foreign driver's license for the first 90 days of residence in Illinois. 625 ILCS 5/6-102.

29. Plaintiff's arrest for No Valid Driver's License, 625 ILCS 5/6-101, on November 29, 2022, was within 90 days of his first arrival in Illinois.

30. Plaintiff was a resident of Illinois on November 29, 2022.

31. Plaintiff's vehicle was impounded despite the presence of his passengers who could have taken possession of it.

32. Plaintiff was also cited for Failure to Wear a Seatbelt (Rear Passenger), 625 ILCS 5/12-603.1.

33. Every person in the vehicle was wearing a seatbelt.

34. On the way to the police station, Plaintiff was taunted and mocked for attempting to provide his height and weight in meters and kilograms, the system of measurement used in Colombia, and later officers berated and swore at him at the police station.

35. Plaintiff was released on a $250 I-bond later that day, and was given instructions for his court date on December 28, 2022 at the Maywood Courthouse.

36. Plaintiff was issued two citations for No Valid Driver's License, 625 ILCS 5/6-101 (Berwyn Ticket Number YN-517-449) and Failure to Wear a Seatbelt (Rear Passenger) 625 ILCS 5/12-603.1 (Berwyn Ticket Number YN-517-450).

37. As noted, Plaintiff's license was valid and lawful, and his passengers were all wearing seatbelts at the time of the stop.

US_ACTIVE\126982009\V-1

38. In fact, Plaintiff was able to retrieve his impounded vehicle using the same valid Colombian license three days later.

39. Plaintiff went to court on December 28, 2022, and all citations were dismissed when Plaintiff presented the Court with documentation of his valid licensure.

40. Plaintiff was without his impounded vehicle for three days, which negatively impacted his ability to take his daughter to daycare and conduct other daily tasks.

41. Plaintiff suffered financial loss as he was forced to borrow money and get rides from friends and family during this time.

42. As a direct and proximate cause of the acts and omissions of Defendant Officers in arresting Plaintiff without probable cause or lawful justification, and wrongfully impounding his vehicle, Plaintiff suffered damages, including but not limited to physical and emotional distress, financial loss, inconvenience, anguish, humiliation, and loss of property.

**The City of Berwyn Maintains Discriminatory and Deficient Language Access Policies**

43. The need to prevent discrimination based on language access has been a legal mandate for federally assisted entities, activities, and programs since Title VI of the Civil Rights Act of 1964 prohibited national origin discrimination.

44. This requirement is underscored by Executive Order 13166, signed in 2000, which provides specific direction to federally assisted programs and activities requiring that these agencies draft Title VI guidance consistent with the Department of Justice's Limited English Proficiency ("LEP") guidance.

45. Berwyn, which receives federal assistance for some of its programs and activities, is obligated to comply with Title VI of Civil Rights Act of 1964.

46. Similarly, under Illinois Civil Rights Act, 740 ILCS 23/5(a), a unit of local government may not:

> (1) exclude a person from participation in, deny a person the benefits of, or subject a person to discrimination under any program or activity on the grounds of that person's race, color, national origin, or gender; or
> (2) utilize criteria or methods of administration that have the effect of subjecting individuals to discrimination because of their race, color, national origin, or gender.

47. The Berwyn Police Department has *no written language access policies* for use by its officers.

48. The Berwyn Police Department has *no dedicated training* regarding how its officers should interact with LEP individuals.

49. And while the Berwyn 9-1-1 emergency phone system uses an interpretation program called "Language Line" for callers, the City has refused to use this interpretation service for police officers on the street.

50. These unlawful deficiencies were placed in clear relief on November 29, 2022, when Defendant Officers discriminated against and wrongfully arrested Plaintiff based on his LEP status and national origin because officers refused to communicate with him in his native language.

51. The lack of adequate policies, and Defendant Berwyn's discriminatory intent, were further illustrated when Officers mocked Plaintiff based on his use of the system of measurement from his home country, and later berated him at the station.

52. The City of Berwyn intentionally discriminated against Plaintiff by virtue of his national origin by maintaining an unlawful system of policing that did not meet the needs of LEP individuals as described above.

53. The City of Berwyn excluded Plaintiff from participation in its programs or activities based on national origin by maintaining an unlawful system of policing that did not meet the needs of LEP individuals as described above.

54. The City of Berwyn utilized criteria or methods of administration that subjected Plaintiff to discrimination based on his national origin by maintaining an unlawful system of policing that did not meet the needs of LEP individuals as described above.

**Berwyn, Cook County, and Illinois are Language and National Origin-Diverse Places**

55. Illinois, Cook County, and the municipality of Berwyn specifically are overwhelmingly diverse places, including with regard to language and national origin.

56. For example, as of the 2020 census, the predominant ancestry group of Berwyn residents was Hispanic/Latino, at 64.15%, a group that includes Plaintiff.

57. According to 2022 U.S. Census data, 54.5% of people ages five and older in Berwyn speak a language other than English at home, and more than 25% of residents were born in another country.

58. Cook County, for its part, has the second highest percentage of LEP individuals of all counties in the state.

59. And, as of 2015, more than one million people in Illinois had Limited English Proficiency, almost 10% of the state.

60. The need is clear, then, in Berwyn and everywhere in Illinois, that municipalities operate their police departments in a way that does not discriminate against individuals who do not speak English.

61. Because Berwyn police, like Defendant Officers, are not adequately trained on how to interact with LEP individuals by virtue of the police department's lack of written language

8

access policies and training, Berwyn residents from other countries who do not speak English are discriminated against on a daily basis and denied from participation in society by virtue of their national origin.

62. Because the City of Berwyn refuses to provide Berwyn police with on-the-street interpretation services, Berwyn residents from other countries who do not speak English are on a daily basis discriminated against and denied from participation in society by virtue of their national origin.

**Berwyn is Out of Step with National Standards and Law Enforcement Best Practices**

63. Throughout the United States, many municipalities have, either on their own accord or following federal or private enforcement action, adopted language access policies for policing that uphold legal obligations to not discriminate based on national origin.

64. These policies include training for police department staff, language identification cards, specific procedures for encounters with LEP individuals, and access to interpretation.

65. In Illinois, multiple municipalities with populations under 50,000 have language access policies in their policy manuals, including Lisle, Lake Villa, Barrington, and Northbrook, among others.

66. Nationally, Hazleton, Pennsylvania, a town of 30,000 residents, has a robust language access policy drafted through a Memorandum of Agreement with the Department of Justice which includes requirements to: (1) notify the Patrol Supervisor when interacting with an LEP individual; (2) utilize a bilingual officer, authorized interpreter, or telephone interpreter to communicate with an LEP individual; (3) hire an LEP Coordinator who maintains training records and updates the policy semiannually; (4) train newly hired officers on the language access policy; and (5) provide annual update trainings on the language access policy.

67. Hazleton's annual training must cover the following: how the policy supports the Department's mission; how to identify who is LEP and primary language; record keeping; the difference between Bilingual Employees, Authorized Interpreters, informal interpreters, and Translators; and how to work with an interpreter.

68. In New Orleans, the police department hosts annual meetings with Spanish-speaking and Vietnamese-speaking populations, conducts surveys, and collaborates with community organizations to collect feedback and guidance to improve their language access policy.

69. Berwyn's failure to have any language access policy clearly violates their legal obligation to not discriminate based on national origin.

## COUNT I: 42 U.S.C. § 1983 – FALSE ARREST
**Against Defendant Officers**
**(Federal Claim)**

70. Plaintiff realleges paragraphs 1-69 as though fully set forth herein.

71. The actions of Defendant Officers described above, in which they seized and arrested Plaintiff without probable cause, violated Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures.

72. It is objectively unreasonable to arrest a person for the offense of driving without a valid license when they were in fact driving with a valid license.

73. Defendant Officers' actions were undertaken willfully and wantonly and with malice, willfulness, and reckless indifference and/or conscious disregard of Plaintiff's rights.

74. Defendants' actions described in this Count directly and proximately caused Plaintiff's injuries, including loss of liberty, emotional distress, financial loss, humiliation, anguish and loss of property.

10

WHEREFORE, Plaintiff Pedro Felipe Uribe Alvarado demands judgment against Defendant Officers Raul Perez, Jr., Joseph Crudo, Vincent Shelton, and Humberto Zamudio, for compensatory and punitive damages, the costs of this action, attorneys' fees, and for any other relief this Honorable Court deems equitable and just.

### COUNT II: 42 U.S.C. § 1983 – WRONGFUL SEIZURE OF PROPERTY
### Against Defendant Officers
### (Federal Claim)

75. Plaintiff realleges paragraphs 1-69 as though fully set forth herein.

76. Defendant Officers' actions described above, whereby they seized Plaintiff's vehicle, without probable cause or lawful justification, violated Plaintiff's Fourth Amendment right to be free from unlawful searches and seizures.

77. Defendant Officers did not have reasonable suspicion or probable cause to believe that Plaintiff had committed, was committing or was about to commit any offense for which impoundment of a vehicle was lawful.

78. Defendant Officers' failure to acknowledge the validity of Plaintiff's foreign driver's license was objectively unreasonable.

79. The actions of the Defendant Officers were willful and wanton and were undertaken with malice, willfulness, and reckless indifference and/or conscious disregard of Plaintiff's rights.

80. DEFENDANTS' actions described in this Count directly and proximately caused Plaintiff's injuries, including loss of liberty, emotional distress, financial loss, humiliation, anguish and loss of property.

WHEREFORE, Plaintiff Pedro Felipe Uribe Alvarado demands judgment against Defendant Officers Raul Perez, Jr., Joseph Crudo, Vincent Shelton, and Humberto Zamudio, for

compensatory and punitive damages, the costs of this action, attorneys' fees, and any other relief this Honorable Court deems equitable and just.

### COUNT III: MALICIOUS PROSECUTION
### Against Defendant Officers
### (State Law Claim)

81. Plaintiff realleges paragraphs 1-69 as though fully set forth herein.

82. Defendant Officers commenced the prosecution by completing and referring the complaint following Plaintiff's arrest to relevant prosecutorial authorities.

83. This action of commencing the prosecution forced Plaintiff to defend in Court against the violations of law he was alleged to have committed.

84. Defendant Officers arrested Plaintiff without probable cause in that his license was valid and lawful to use in Illinois on the date of his arrest.

85. Defendant Officers acted with malice, as evidenced by their mockery of his use of the metric system, their berating and swearing at him at the police station, their refusal to release the vehicle to another passenger present on the street, the absence of probable cause for the arrest, and their refusal to call a Spanish-speaking colleague, among other factors.

86. The criminal charges against Plaintiff were disposed of favorably by dismissal in a manner indicative of his innocence on December 28, 2023.

87. Plaintiff suffered damages from his prosecution, including having to borrow and rent cars from friends, spend time attending a court date to defend the charges, and contend with the reputational injury possible from a prosecution.

88. The actions of the Defendant Officers were willful and wanton and were undertaken with malice, willfulness, and reckless indifference and/or conscious disregard of Plaintiff's rights.

89. As a direct and proximate result of the malicious prosecution, Plaintiff suffered damages including, loss of his liberty, loss of property, loss of income, emotional distress, damage to reputation, and mental anguish and distress.

WHEREFORE, Plaintiff Pedro Felipe Uribe Alvarado demands judgment against Defendant Officers Raul Perez, Jr., Joseph Crudo, Vincent Shelton, and Humberto Zamudio for compensatory and punitive damages, the costs of this action, and for any other relief this Honorable Court deems equitable and just.

### COUNT IV: 42 USC 2000d – TITLE VI DISCRIMINATION
### Against Defendant City of Berwyn
### (Federal Claim)

90. Plaintiff realleges paragraphs 1-69 as though fully set forth herein.

91. During the relevant period, Defendant Berwyn received federal financial assistance within the meaning of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d.

92. Included in this funding, the Berwyn Police Department received financial assistance from the U.S. Department of Justice ("DOJ") for operations which constitute a "program or activity" as defined by the DOJ Title VI implementing regulations, 28 C.F.R. 42.102(d).

93. The DOJ's Guidance to Federal Financial Assistance Recipients Regarding Title VI Prohibition Against National Origin Discrimination Affecting Limited English Proficient Persons, 67 FR 41455, established that the City and Police Department must "ensure meaningful access to their programs and activities by persons with limited English proficiency (LEP)."

13

94. The Berwyn Police Department does not have any written policies, formal trainings, or departmental orders for officers on the street related to providing meaningful access to LEP individuals.

95. Defendant Berwyn's decision not to adopt a language access policy or train police personnel was a result of intentional discrimination against LEP persons based on their national origin.

96. Defendant Berwyn's failure to comply with 42 U.S.C. §2000d et seq. denied plaintiffs the benefits of a federally-assisted program.

97. Defendant Berwyn's failure to comply with 42 U.S.C. §2000d et seq. directly and proximately caused plaintiff's injuries.

WHEREFORE, Plaintiff Pedro Felipe Uribe Alvarado demands judgment against the City of Berwyn for compensatory damages, an injunction ordering Berwyn to bring its police department into compliance with Title VI, reasonable attorney's fees, the costs of this action, and for any other relief this Honorable Court deems equitable and just.

**COUNT V: 740 ILCS 23/5(a) – ILLINOIS CIVIL RIGHTS ACT DISCRIMINATION**
**Against Defendant City of Berwyn**
**(State Law Claim)**

98. Plaintiff realleges paragraphs 1-69 as though fully set forth herein.

99. The Illinois Civil Rights Act ("ICRA") prohibits any state, county, or local government in Illinois from utilizing criteria or methods of administration that "have the effect of subjecting individuals to discrimination because of their race, color, national origin, or gender." 740 ILCS 23/5(a)(2).

100. Berwyn has deliberately chosen to operate its police department with no meaningful language access policies despite the large proportion of immigrants, diversity of ethnic

backgrounds of residents, and percentages of individuals who do not speak English in the home.

101. The criteria and methods Berwyn uses in determining how to address language access has resulted and continues to result in a disparate impact on residents based on national origin.

102. Berwyn's disparate approach to language access directly produces disparate harm, placed into stark relief by the instant incident. LEP residents are subject to harmful policing tactics leading to unlawful arrests. The lack of language access policies changes the way police respond to residents of other national origins than United States natives.

103. Berwyn's discriminatory language access practices constitute criteria and methods of administration that create a disparate impact on non-English speakers and individuals of other national origin, violating the ICRA rights of Plaintiff.

104. The Illinois Civil Rights Act also prohibits any state, county, or local government in Illinois to "exclude a person from participation in, deny a person the benefits of, or subject a person to discrimination under any program or activity on the grounds of that person's race, color, national origin, or gender." 740 ILCS 23/5(a)(1).

105. Berwyn's deliberate choices to not maintain any substantive language access policies and trainings exclude residents with limited proficiency in English like Colombian national Plaintiff, from participation in routine interactions with police due to language and national origin, and illustrate Berwyn's inability to meet those residents' needs in terms of interacting with police.

106. Berwyn's discriminatory language access practices constitute exclusion of individuals from programs or activities based on national origin, violating the ICRA rights of Plaintiff.

WHEREFORE, Plaintiff Pedro Felipe Uribe Alvarado demands judgment against the City of Berwyn for compensatory and punitive damages, an injunction ordering Berwyn to bring its police department into compliance with ICRA, reasonable attorney's fees, the costs of this action, and for any other relief this Honorable Court deems equitable and just.

### COUNT VI: 745 ILCS 10/9-102 – INDEMNIFICATION
### Against Defendant City of Berwyn
### (State Law Claim)

107. Plaintiff realleges paragraphs 1-69 as though fully set forth herein.

108. Defendant City of Berwyn is the employer of the individual Defendant Officers.

109. Defendant Officers committed the above-alleged acts under color of law and in the scope of their duties as employees of the City of Berwyn.

110. In Illinois, public entities are directed to pay for any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities. 745 ILCS 10/9-102.

111. As a direct and proximate cause of Defendant Officers' unlawful acts, which occurred within the scope of their employment activities, Plaintiff was damaged, including the deprivation of his liberty, loss of property, loss of income, emotional distress, damage to reputation and mental anguish and distress.

WHEREFORE, Plaintiff Pedro Felipe Uribe Alvarado demands judgment against Defendant City of Berwyn for compensatory and punitive damages, the costs of this action, and for any other relief this Honorable Court deems equitable and just.

**Plaintiff DEMANDS TRIAL BY JURY.**

                                                                                                    Respectfully Submitted,

                                                                                                     /s/Daniel Massoglia
                                                                                                     *One of Plaintiff's Attorneys*

Daniel Massoglia
Emma Melton
First Defense Legal Aid
601 S. California Ave
Chicago IL 60612
p: 336-575-6968
e: daniel@first-defense.org
e: emma@first-defense.org

Harold Hirshman
Diane O'Connell
DENTONS US LLP.
233 S. Wacker Dr.
Suite 5900
Chicago, IL 60606
(312) 876-8000
Diane.oconnell@dentons.com
Harold.hirshman@dentons.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that I served a copy of the foregoing document on Defendants' counsel of record on May 21, 2024 by filing it with the CM/ECF system, which generates electronic notice to parties.

                Respectfully submitted,
                        *Daniel Massoglia*
                        One of Plaintiff's Attorneys