IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PEDRO FELIPE URIBE ALVARADO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 23-cv-17084 |
| | ) | |
| CITY OF BERWYN, et. al., | ) | Hon. Sharon Johnson Coleman |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT
BERWYN'S MOTION TO DISMISS COUNTS IV AND V**

**INTRODUCTION AND STATEMENT OF FACTS**

On November 29, 2022, Dr. Pedro Felipe Uribe Alvarado ("Plaintiff" or "Dr. Uribe"), a Colombian national newly arrived in the United States, was driving with his wife and friend to pick up his daughter from daycare when he was pulled over by Berwyn Police Department Officers ("Defendant Officers"). (Dkt. 35 ¶¶ 17-19). Dr. Uribe produced his valid Colombian driver's license to Defendant Officers. (Dkt. 35 ¶ 20). At the time, Dr. Uribe's understanding of the English language was limited and he spoke only Spanish. (Dkt. 35 ¶¶ 18, 22). Despite this, Defendant Officers spoke to him only in English and did not call for an interpreter. (Dkt. 35 ¶ 21). Defendant Officers forced Dr. Uribe out of his car, and searched and handcuffed him in front of his wife and friend. (Dkt. 35 ¶ 23). Dr. Uribe was taken to the police station and wrongfully charged with No Valid Driver's License (625 ILCS 5/6-101), despite having a valid Colombian driver's license as permitted by the Illinois Vehicle Code (625 ILCS 5/6-102). (Dkt. 35 ¶¶ 26, 28). In addition to this humiliation, Dr. Uribe suffered financial loss as a result of his vehicle being impounded following this interaction. (Dkt. 35 ¶¶ 31, 40-41).

Dr. Uribe came to the United States to find a better life for himself and his family but was instead subject to wrongful arrest and harassment because of his national origin. This type of treatment is exactly what Congress aimed to prevent when enacting Title VI of the Civil Rights Act of 1964. (Dkt. ¶¶ 43-44). As a recipient of federal funds, Berwyn Police Department is required to abide by Title VI and provide equal access to services to all residents of Berwyn regardless of national origin. (Dkt. 35 ¶¶ 45, 92). Other municipalities with similar demographics have managed to implement and enforce policies that allow meaningful access to police department services regardless of national origin. (Dkt. 35 ¶¶ 63-68). The City of Berwyn has become a hub for immigrants—like Dr. Uribe—as suggested by census data showing that 54.5% of residents speak a language other than English at home. (Dkt. 35 ¶ 57).

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing a pleader's right to relief and so that the defendant has "fair notice" of the claim. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain sufficient factual matter to state a facially plausible claim such that the court may reasonably infer that defendants are liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When ruling on a 12(b)(6) motion to dismiss, the court must accept as true all factual allegations within the complaint. *Id.* In doing so, the court construes the complaint in the light most favorable to the plaintiff with all possible inferences' being drawn in his favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). A court should only grant a motion to dismiss only when a plaintiff's claims are not legally sufficient to state a claim upon which relief can be granted. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).

## ARGUMENT

I. **THE MOTION SHOULD BE DENIED BECAUSE BERWYN RECEIVES FEDERAL FUNDS FOR POLICING, AND BECAUSE PLAINTIFF'S INTERESTS ARE WITHIN THOSE PROTECTED BY TITLE VI**

Title VI of the Civil Rights Act of 1964 prohibits entities that receive federal financial assistance from discrimination on the basis of race, color or national origin. 42 USC § 2000d-4a. This protection includes discrimination based on language access. *Lau v. Nichols*, 414 U.S. 563 (1974).

Defendant's Motion makes no argument that it and its police department do not discriminate based on national origin, waiving this argument.[1] Instead, Defendant advances three primary arguments in favor of dismissal of Plaintiff's Title VI claim. Defendant argues (1) that Plaintiff has no standing because he is not an intended beneficiary of Title VI; (2) that he does not adequately plead that Berwyn is a "program or activity" subject to Title VI; and (3) that he does not identify a specific federally funded program. None of these arguments is availing.

As outlined within, Plaintiff, under Circuit law, does not need to be an intended beneficiary of the federally funded program. And while there may be a body of case law in this district indicating that municipalities are not subject to Title VI, and that Illinois municipal departments cannot be independently sued, this creates an absurd result contrary to the intent of Congress, and the decisions of other courts nationally, and so existing precedent should be disregarded to the extent it would prohibit Plaintiff from proceeding on this claim. Finally, Plaintiff's First Amended Complaint clearly identifies specific federal funding that Defendant receives.

A. **Plaintiff may pursue his claim because his interest falls within the zone of interests intended by Congress to be protected by Title VI**.

---

[1] Failure to develop argument constitutes waiver. *Black & Decker Inc. v. Robert Bosch Tool Corp.*, 371 F. Supp. 2d 965, 970 n. 3 (N.D. Ill. 2005) (citing *Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 964 n. 1 (7th Cir. 2004)).

The Supreme Court recognizes an implied private right of action under Title VI, allowing private individuals to sue for both injunctive relief and damages to address allegations of intentional discrimination. *Barnes v. Gorman*, 536 U.S. 181, 185 (2002); *Alexander v. Sandoval*, 532 U.S. 275, 280, 284-285 (2001)). Defendant attacks this private right of action by framing it somewhat questionably as a matter of standing, but, more importantly, the argument fails because Plaintiff does not need to be an intended beneficiary of the federal aid.. *See Friends of Trumbull v. Chi. Bd. of Educ.*, 123 F. Supp. 3d 990, 995 (N.D. Ill. 2015) ("Settled law has long distinguished between Article III standing and the statutory zone of interests") (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125-128); *T.S. ex rel. T.M.S. v. Heart of CarDon, LLC*, 43 F.4th 737, 746 (7th Cir. 2022) (ending "intended beneficiary" test in this Circuit).

1. <u>The "intended beneficiary" test is no longer good law in the Seventh Circuit and the Motion should be denied</u>.

The primary problem with Defendant's standing argument is that Congress eliminated the previous "intended beneficiary" requirement in the Civil Rights Restoration Action of 1987 ("CRRA"), 42 U.S.C. § 2000d-4a. *T.S.*, 43 F.4th at 746. In *T.S.*, the Seventh Circuit reasoned that because the CRRA "expand[ed] the class of plaintiffs that could sue" under "antidiscrimination-in-federal-funding statutes," a plaintiff need not "establish[] his direct connection" to the entity receiving federal funds. *Id*. In short, the intended beneficiary test "did not survive passage of the CRRA." *Id*.

Plaintiff, then, must instead avail himself of the "zone of interests" analysis. *See id*. at 741. This analysis has two steps. First, a court looks at the purpose of a federal statute and identifies the interests it was arguably intended to protect. *Id.* Second, a court compares the interests of the plaintiff to the statutory interests. *Id.* Because a purpose of Title VI is to prohibit national origin and language access discrimination by entities receiving federal funds, *Regents of University of*

4

*California v. Bakke*, 438 U.S. 265, 285 (1978), Plaintiff's present lawsuit seeking to enjoin the unlawful operation of a discriminatory police department is in alignment with Title VI's zone of interests. Plaintiff alleges intentional discrimination on the basis of national origin based upon Defendant City's lack of protections for individuals with Limited English Proficiency ("LEP"), within Title VI's zone of interests, and defendants make no argument to the contrary.

The City's argument relies on the line of cases stemming from *Simpson v. Reynolds Metals Co., Inc.,* a Rehabilitation Act case that narrowed judicial recourse for discrimination, but this reliance is misplaced. 629 F.2d 1226 (7th Cir. 1980); *see* Mot. 4-5. Congress specifically rejected Supreme Court and other limiting precedent with the passage of the CRRA. *See generally T.S.*, 43 F.4th 737. Because *Simpson* is no longer good law, this Court should reject Defendant's arguments relying upon it and deny the Motion.

**B. A legal regime in which Plaintiff could not enforce Title VI violations against any Illinois municipality or municipal program is an absurd result contrary to the intent of Congress, and district court precedent to the contrary should be disregarded**.

There is a glaring problem in the Seventh Circuit's Title VI jurisprudence—in Illinois, a person cannot bring suit against a department of a municipality for violations of Title VI, *Gray v. City of Chicago,* 159 F.Supp.2d 1086, 1089 (N.D. Ill. 2001), but also cannot bring suit against a municipality itself under Title VI because it is not a "program or activity" for the purposes of the statute. *See* Mot. at 3-4 (citing *Smith v. City of Chicago*, 143 F. Supp. 3d 741, 758 (N.D. Ill. 2015), *Hodges v. Public Bld. Comm'n of Chicago*, 864 F.Supp. 1493, 1505 (N.D. Ill. 1994), *Wilkins v. City of Chicago*, No. 23-CV-04072, 2024 WL 2892840 at *3 (N.D. Ill. June 10, 2024), and *House v. City of Milwaukee*, No. 21-CV-0866-bhl, 2022 WL 16715835 at *6 (E.D. Wis. November 4, 2022)).

Notably, none of the cases Defendant cites are binding precedent upon this Court. All are district court opinions. Now, however, *this* District Court has the opportunity to fill a gaping hole in federal civil rights jurisprudence by recognizing that a municipality may not operate discriminatory programs or activities receiving federal funding without being subject to the clear intent of Congress in enacting Title VI and the CRRA. This is an untenable state of affairs, and an absurd perversion of the law. "[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." *United States v. Gordon*, 64 F.3d 281, 283–84 (7th Cir. 1995) (quoting *Griffin v. Oceanic Contractors*, 458 U.S. 564, 575, (1982)). This Court has the chance to correct an erroneous line of reasoning in Title VI cases and help fulfill the promise of the Civil Rights Act of 1964.

Interpreting the law to allow a police department to be sued directly in a Title VI context has precedent in other jurisdictions. *See Smith v. County of Orange*, 678 F.Supp.3d 1182, 1214 (C.D. Cal. 2023) (quoting *Mann v. City of Chula Vista*, No. 18-CV-2525-WQH-MDD, 2020 WL 5759749, at *3 (S.D. Cal. Sept. 28, 2020) ("A city police department is an entity separate from the city and subject to suit.)).[2] Had Dr. Uribe been harmed by a police department in California instead of Illinois, he would have a clear procedural pathway to sue under Title VI. However, as a resident of Illinois, he seemingly has no legal avenue to sue Berwyn Police Department for their violation of Title VI except by suing its municipality. This creates a situation where individuals like Dr. Uribe can be harmed by discriminatory municipal police departments but have no legal recourse under federal law because of questionable interpretations of state law. This is clearly not what Congress intended when it passed Title VI and the CRRA, an intent that is underscored by

---

[2] Plaintiff respectfully requests that should the Court dismiss his Title VI claim on this basis, that such dismissal be without prejudice to allow the opportunity to cure and name the Berwyn Police Department as the proper defendant.

guidance federal officials have periodically offered on its implementation.[3] If this Court dismisses Count IV, it allows Defendants to continue to operate its police department in violation of Title VI and continues the dangerous trend from courts in this district holding that it is permissible to discriminate against individuals based on national origin so long as you are located in Illinois.

    C. **Plaintiff Identifies the Specific Program that Receives Federal Funding**.

Defendants argue briefly that Plaintiff does not identify a specific federally funded program. Mot. at 4 (citing First Amended Complaint at ¶ 2). This ignores Plaintiff's allegation in paragraph 92 that the Berwyn Police Department, specifically, receives assistance from the United States Department of Justice, and goes on to note the Department of Justice's specific guidance to recipients of this funding as it pertains to individuals with Limited English Proficiency. This, too, is not a basis for dismissal.

    II.    **PLAINTIFF STATES A CLAIM UNDER THE ILLINOIS CIVIL RIGHTS ACT BASED ON DEFENDANT'S POLICY OF NOT PROVIDING SERVICES TO ALL RESIDENTS REGARDLESS OF NATIONAL ORIGIN**

The Illinois Civil Rights Act ("ICRA") prohibits a city from utilizing criteria or methods of administration that "have the effect of subjecting individuals to discrimination because of their race, color, national origin, or gender." 740 ILCS 23/5(a)(2). It also bars a City in Illinois from "excluding a person from participation in, denying a person the benefits of, or subjecting a person to discrimination under any program or activity on the grounds of that person's race, color, national origin, or gender." 740 ILCS 23/5(a)(1).

---

[3] The Department of Justice has made it clear that one purpose of Title VI is for law enforcement agencies to provide language access to individuals in their respective municipalities. Kristen Clarke, *Letter to Law Enforcement Colleagues*, U.S. DEP'T OF JUSTICE, December 12, 2023, https://www.lep.gov/sites/lep/files/media/document/2023-12/2023%2012%2011%20LELAI%20Ltr%202%20LEAs%20FINAL_508.pdf.

Here, Defendant Berwyn is in violation of both cited subsections of ICRA. Berwyn has consciously chosen to operate its police department with a policy of non-compliance with ICRA. It has no written language access training materials, despite Berwyn's significant immigrant population, the diverse ethnic backgrounds of residents, and the prevalence of individuals who do not speak English at home. It does not adequately train officers on interacting with LEP individuals. Berwyn's criteria and methods for addressing language access have resulted in, and continue to result in, a disparate impact on residents like Dr. Uribe based on national origin. *See Jackson v. Cerpa*, 696 F. Supp. 2d 962, 964 (N.D. Ill. 2010) (ICRA mirrors federal discrimination law); *Lau*, 414 U.S. 563 (establishing that that national origin discrimination under Title VI includes differential treatment based LEP status). The policy, simply put, is to ignore the law and discriminate against residents. Defendant both subjects individuals like Dr. Uribe to discrimination based on national origin via its criteria and methods of administration, 740 ILCS 23/5(a)(2), and excludes him from participation in interactions with law enforcement based on national origin, 740 ILCS 23/5(a)(1).

Defendant City argues ICRA should not apply here because Plaintiff fails to point to a specific policy or practice, characterizing Plaintiff's argument as pointing to a lack of policy. While Plaintiff disputes this characterization—and on a Rule 12(b)(6) Motion, the Court should credit Plaintiff's well-pled allegations and construe all inferences in its favor—adopting this conclusion would still not suffice to dismiss the ICRA claim. Although Plaintiff was unable to locate a case on this issue pertaining to ICRA, it bears noting that in a similarly remedial scheme, that of *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978) in a section 1983 context, the non-existence of a policy is indisputably actionable. *Arriaga v. Dart*, 568 F. Supp. 3d 953, 960 (N.D. Ill. 2021) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("When a

municipality is on notice of a pattern of unconstitutional practices, it may be held liable on the theory that the 'decision not to train certain employees about their legal duty to avoid violating citizens' rights' is tantamount to an official policy of condoning constitutional violations.")).

Ultimately, where a municipality has "actual or constructive knowledge that its agents will probably violate constitutional rights, it may not adopt a policy of inaction." *King v. Kramer*, 680 F.3d 1013, 1021 (7th Cir. 2012) (quotations omitted); *see also Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 966 (7th Cir. 2019) ("a 'policy' can take the form of a hands-off approach or a policy to do nothing"); *Orozco v. Dart*, 64 F.4th 806, 824 (7th Cir. 2023) ("municipal liability can be premised, as here, on municipal inaction, such as 'a gap in express policies.'"); *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 381 (7th Cir. 2017) ("this court has recognized these principles for years" (citing *Sims v. Mulcahey*, 902 F.2d 524 (7th Cir. 1990), *Avery v. Cty. of Burke*, 660 F.2d 111, 114 (7th Cir. 1981), *Murray v. City of Chicago*, 634 F.2d 365, 366–67 (7th Cir. 1980))). Given that ICRA is intended to provide a state law remedy identical or nearly so to federal discrimination canon, *Jackson*, 696 F. Supp. 2d at 964, the *Monell* jurisprudence should be applied here.

Here, Defendant Berwyn has been on notice that many of its residents do not speak English, such that its agents are likely to encounter LEP individuals and be unable to serve them. Defendant City admits in its Motion that the Berwyn Police Department does not have written policies or practices in place guiding what happens when its officers come into contact with an LEP individual. In this case, Defendant's lack of policies discriminate against and harm its residents. Had officers been trained to simply speak to Dr. Uribe in Spanish prior wrongfully arresting him, they would have realized what other police department officials and a circuit judge later did: that his Colombian license was valid for use on November 29, 2022. The policy of inaction on this

9

topic has thus led to a) discrimination based upon an ICRA-protected class and b) the denial of equal access to Berwyn Police Department services because of national origin. The status quo creates systemic, ongoing risk to all LEP individuals in the City, and has doubtless been repeated. This is illegal under ICRA.

WHEREFORE, Plaintiff respectfully requests this Court issue an Order denying Defendants' Motion to Dismiss Counts IV and V, instructing all Defendants to answer Plaintiff's First Amended Complaint, and granting any other relief this Court deems just and equitable.

Respectfully submitted,

/s/Emma Melton
*One of Plaintiff's Attorneys*

Emma Melton
Daniel Massoglia
First Defense Legal Aid
601 S. California Ave.
Chicago, IL 60612
773-357-6454
emma@first-defense.org
daniel@first-defense.org

Hannah Marion
*of counsel to*
First Defense Legal Aid
601 S. California Ave.
Chicago, IL 60612
708-797-3066
hannahcorinne3@gmail.com

Harold Hirshman
Diane O'Connell
DENTONS US LLP.
233 S. Wacker Dr., Suite 5900
Chicago, IL 60606
(312) 876-8000
Diane.oconnell@dentons.com
Harold.hirshman@dentons.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

      I, Emma Melton, certify that a copy of the foregoing document was filed on August 13, 2024 using the CM/ECF system, which generates electronic notice to counsel of record.

/s/Emma Melton
*One of Plaintiff's Attorneys*
